is 417-0708-0707 consolidating. People v. Michael Conner, as I felt, is Douglas Johnson. You are he, sir? And for the athlete, James Majors. We request you folks be here early. You are, and I thank you for that so we can get started early. So, Mr. Johnson, you may proceed, sir. May it please the court, counsel. My name is Doug Johnson and I represent Mr. Conner, who is the defendant, the appellant, currently serving a natural life sentence pursuant to predatory criminal sexual assault convictions for the crimes against two victims. Our position here is that the trial court, after the evidentiary hearing, the decision was erroneous. It was unreasonable. The issue being that there can be no question that Mr. Conner was offered 18 years, a few months prior to the trial, and he rejected that based on his trial attorney's erroneous advice. I don't think your honors will have a record where there was so much confusion and outright incorrectness about a sentence as you see here very often. Here, I believe we have shown a substantial violation of Mr. Conner's constitutional right to effective assistance of counsel with regard to the plea negotiations. Really what the question here is, is this case more like Curry or is it more like Hale? In Curry, an offer was made and the offer was four and a half years. Okay, we'll give you four and a half years. And in that case, the defense attorney fell on his sword and said, yeah, they offered four and a half years. I told him he was going to get probably around that anyway, so he went to trial. And as it turned out, the mandatory minimum was 12 years. And so the Hale court said, well, we're going to look at a couple things. We're going to look at the sentence disparity, 12 years versus four and a half years. Now, that's a big disparity, so we're going to call that one in the defendant's favor. That's a big disparity. Secondly, how strong was the defendant's case? Could he have won? Because if he couldn't have won, it'd be more likely he'd take the deal. And the court said the evidence was really strong in Curry. And so they said, well, okay, we believe there, too, is in favor of the defendant. And so the defendant, for those reasons, there were others, but for those reasons, the court said, yeah, you know, your attorney said, he told you, you're going to get something like the minimum. And based on that, you said, I would have taken the deal. We're going to give you relief. Hale was different. In Hale, the defendant was offered 15 years. And the court looked at it and said, there was nothing from the attorney in that case. The opinion doesn't show us what the attorney had to say about the defendant saying, I got offered 15 years. The defendant said, I would have been inclined to take the 15 years if I'd known that my attorney was wrong about what I was going to get. Well, in this case, the defendant was told repeatedly he faces up to 60 years in prison, wasn't he? He absolutely was. Never mentioned life, but that is not the point. The point is, yeah, 120 years, unless medical science goes crazy, is going to be life. I agree with that. But the point is, the defendant was also told six is the minimum. Six, plus six, consecutive. If the defendant understands what consecutive means, that's the minimum. And that, I suggest, is the key, is the point of why I'm here. This defendant thought I could get six, or six plus six, 12, at 85%. So when I'm looking at 18 years, at that time, I could get 12. I'm a first-time offender. No one died here. Yeah, we know, and you obviously know better, these crimes actually get more serious sentences than murder quite frequently. But I don't think that's a common-sense thing that a lot of criminal defendants know when they are charged with predatory criminal sexual assault against minors. And to be clear, at what point during the proceedings was it communicated that this was mandatory natural life? Never. Opposed to possible natural life. Absolutely. I submit to your honor, never. Even in the court's decision, in the order that I'm saying was manifestly erroneous, the court continues to say the defendant knew he could receive natural life. The defendant knew he faced natural life a few months before sentencing. So they're not even taking the position, and the court isn't, that he knew you are going to get natural life. They're taking the position he knew. But if you look at this record, we have attorneys, we have judges. Those words don't come out. Post-presentence investigation, defendant faces a possible life sentence. So I don't think we can have Michael Connor, hey, you knew you could get life four months before. We can't put that burden on him. What's more intimidating to someone than speaking in public and then coming in for your sentencing hearing? I guess I'll go to the state's main point, perhaps, which this leads me to. The defendant's statement and allocution. He said something to the effect in the transcript, and they jump on this. Even if I'd known the outcome of the verdict, I wouldn't have admitted to something I didn't do. I submit the law can't hold that against him. Throwing himself on the mercy of the court. He is standing before the court, and we can't shill his right to appeal, his right to relief, by holding that statement against him. We certainly can't impose a higher sentence on a black veteran. Isn't that a requirement? It's not a question of holding it against him. If the court found in the record were to support that under no circumstances would he have pleaded guilty, isn't that a requirement to show prejudice? I think that they are saying, yes, hold that against him because you can't show prejudice, because with his statement, they're arguing. Just hold that against him. I'm not sure. It's a threshold he needs to cross. Absolutely, he has to show prejudice. He has to cross it. I mean, can he show, if he says under no circumstances would I have pleaded guilty no matter what, then how does he cross the threshold of showing prejudice based upon any claim of inaccuracy regarding the sentencing range? A couple of reasons. One, he didn't say under no circumstances would I have pled guilty no matter what. He said, as he stood there, based on the even if I knew, I mean, that can be interpreted many ways. Even if I knew the outcome, even if I knew I'd be standing here. Now, let's pause for a minute. Let's assume, going back to my question, that he said under no circumstances would I have pled guilty. Can you still make this same claim that it's ineffective assistance? It wouldn't be as much of a dead-bang winner if I had to say, if he had said under no circumstances would I have pled guilty, but let's say he said that. He still was standing before the sentencing court thinking he could get a possible life sentence, thinking it was, not knowing it was mandatory. So maybe he's sitting there when he says that, oh, they're going to give me 20 years. So the trial court, when he says that on the record, he can't be believed. Oh, I believe he can be believed, and he testified at the evidentiary hearing when he was fully apprised of the situation, what his testimony was, and he wasn't impeached. I know that a defendant, we can, I don't know, do we presume a defendant is lying? What did he say at the evidentiary hearing? He said that I would have taken the deal had I known that I was going to, I was absolutely going to go away for life because then I would have, that's a big deal, then I would have life back. And it makes sense. The attorney would have, had the attorney known, I think the attorney would have said, there's no reason to say we have to take this deal. We didn't hear from the attorney. No, we did not. Very interestingly, the prosecutor nor the attorney came forward for the state. Couldn't even call off the defense? The prosecutor? No, the defense attorney. Why wasn't he called by the defense of the third state? Reality. I don't know what that means. I don't know if I can go off the record, but he didn't seem like he'd cooperate. And the records feature itself, we don't have to. Is that a requirement before someone can be subpoenaed to testify? No, Your Honor, but it certainly makes one. So he was going to lie if he were subpoenaed? If we're going off the record, I certainly wouldn't accuse him of that. What I'm saying is we have a record here, unlike in any other, where we know what he knew. He says, not only do we see it throughout the trial, he says on page SEC 570, at no time was this defendant ever told at any time he was subject to life. Who was the defense attorney? I don't know, Your Honor. And I'm not here to bash him, he did some good things. He zealously represented his client. Counsel, I want to go back to the statement in allocution. At that time, this is in advance of the defendant being sentenced on both cases, right? Yes, Your Honor. And at that time, he stands convicted of the offenses in both cases, correct? Yes, Your Honor. And at that time, he faces mandatory natural life. Is that right? No, I believe at that time, he's getting mandatory natural life. You are going to receive mandatory natural life. You don't face it. But that has not been communicated to him. My point is, I don't believe the record suggests, no, yes. My answer to that is yes, it has not been communicated to him. So he's making a statement in allocution thinking, well, who knows actually what he's thinking. He's making a statement in allocution where the admonitions to that point reflected a potential sentence of 12 to 120, right? Is that right? I believe so, yes. Okay. And he's making this statement in allocution without it having been communicated that no matter what you say, you're facing mandatory natural life. That's, in essence, when he stood up there to make the statement in allocution, that was the reality. He was going to receive a mandatory natural life sentence. Correct. Is that right? Okay. Thank you. And what the point is, one of the state's arguments is another point, the strength of the evidence. They try to say, well, this case is like hail because the evidence was not strong. This defendant really tried to defend himself. He retained experts. He had evaluation.  And I submit to your honors that while I have zealously attempted to zealously represent this client and argued that relief should be granted, as I stood here years ago, the reality is the trial judge said this was, quote, not a close case. This was, the evidence was overwhelming. So this defendant did not have, and I believe we all know, you are accused of two child victims. You're probably going to be convicted. It's an easy accusation to make and the hardest to defend against, not to mention the chlamydia issue. A child had chlamydia. So I think going into that case, an attorney would have to say, we've got a problem here, they're off for 18 years. If that attorney had said you're going to get convicted and you're going to get mandatory life, then this defendant's testimony at the evidentiary hearing, along with that of his mother, and I guess I don't think we should presume bias just because the defendant's mother testifies on his behalf. No one came in to say he was lying. They could have had the attorney come in and say, this never happened. But the fact is, this happened. I don't understand why you think it would be the state's burden to call the attorney. Why wouldn't it be your burden? I believe we carried our burden when we presented the defendant. And we presented the defendant, the defendant's mother, who were at the meeting where the offer was made. And we have the record to back us up to show the state, the judge, throughout the entire proceedings didn't get it right. I believe that certainly puts the ball in their court. We carried our burden to the point we had to. Well, it's not burden shifting. You're just talking about the persuasiveness of the evidence presented. But we hear lots of cases involving claims of ineffective assistance of counsel that go through the post-conviction process. And at the evidentiary hearing, the defense counsel is there and testifies routinely. That's something we don't have here. We don't have anything from the defense attorney. So it is somewhat unusual. It is somewhat unusual. And it's a record, as I started out saying. It's very unusual because we know from the point of pre-trial arraignment and right through the sentencing, everybody had it wrong until the defendant got hit with a natural life sentence. As I said, the defendant said no one ever told him. I think the defendant's, I'm sorry, the attorney's words on the record saying no one ever told him that he was subject to a life sentence, even that is incorrect. Was a sentence of 18 years legally permissible in this case? They could have made, it would have been permissible if they, let's say they didn't feel with one of the victims, the one that didn't show and then gone on 6 to 30 on the other one. So I believe that could have been fashioned and the judge would have accepted it. And I know that after Hale, there were Supreme, I believe it was Fry in another case said, well, you also have to show that the judge would have accepted it. The judge didn't say anything at the evidentiary hearing about, oh, I wouldn't have accepted this. There was no issue about that. There was no evidence that the prosecutor would have withdrawn the deal, didn't come in and say that, wasn't there. Nothing on the record that allows that as a reasonable inference. Judge said, no, that's not it. What about the credibility findings that the trial judge went to great pains to make, it sounds like, after hearing the witnesses testify here, finding the witnesses lacked credibility? I believe those credibility findings could have been made without the testimony. I think those credibility findings were, we have a defendant sitting in jail for natural life and we have his mother. Yes, they do have some, I understand why a court may infer natural bias in that situation, but show me the impeachment. Show me where their testimony contradicts anything that came before. Is that the requirement? Why isn't the trial judge simply permitted to assess the witness testimony and decide whether the court believes it or not? I believe, I understand this court doesn't make credibility definings, but I ask this court to look at that testimony and find, I believe this court does have the power to disagree with the credibility findings. Going back, you say, where's the impeachment? There's no requirement for testimony to be impeached. The better question is, to the extent it matters, the credibility findings, why shouldn't we accept them? Because their basis is, I'm sorry, their speculative credibility findings. We have to conclude that the credibility findings by the trial court in this case were contrary to the manifest way of the evidence? I believe so. No reasonable person could have reached the conclusion the trial court did? Not based on this record. Also, you look at the findings the judge made. They're wrong. The basis of that record is talking still about facing a life sentence. I mean, it is clearly an unreasonable opinion. So, sure, you can say the defendant was not credible, but there's nothing, why not? What don't you believe? Now, if we had an attorney come in, or the state, and say- Counsel, I was a trial judge for a long time. I heard lots of witnesses who I saw and heard them, and listened to their testimony, and cross-examination, and concluded, I didn't believe them. Was that wrong? I'm sure it was not wrong, Your Honor. Well, I mean, how do we- You're arguing this judge who saw and heard these witnesses can't be believed regarding the court's credibility findings. We shouldn't respect them. Why not? I'll take two reasons. One, look at what happened from the beginning in this very serious case. This guy is told the wrong thing, and the most important thing that's ever happened in his life. You face wrong all the way through. And secondly, where's the defense attorney to come in and say there was no offer? To say they're not telling the truth. They could have called him. I mean, reality, certainly. Isn't it the defendant's burden at the third stage to prove that the claim he has made is correct? Absolutely. Well, then how is it that when you say where's the defense attorney, why is the- This is not the trial. We're not shifting a burden that the state has. This is a burden the defendant has. If the case needs to be tucked on in this regard, why didn't the defense call the defense attorney? And to the extent that the absence of the defense attorney might be the absence of the material witnesses' testimony from which a negative inference could be drawn, why isn't that one which would apply to the defendant? Because of record- I'll cite it to the record. I believe I did. It's SEC 570. And that is- it's better than- I couldn't have gotten anything better from that attorney than he already said and what the defendants- When did he say that and what did he say? He said the defendant was never told at any time he was subject to life imprisonment. This is in the argument at sentencing where the defense attorney says give him the minimum. Give him 6 or 12. The defendant said that. So I can't get a benefit from him at the trial. I'm sorry, at the evidentiary hearing. He's not going to say anything better than that. Well, wouldn't he be able to speak specifically about plea discussions and whether or not the defendant was amenable to any guilty plea under any circumstances, which seems to me to be an important aspect here. The- and the defendant said it. I'm talking about defense counsel who could have been called to testify about that subject as opposed to leaving this hole in the record. The- I'm not- strategic decision, perhaps, I guess. Again, I don't want to go off the record. Well, okay. But the point is we have the plea discussions involve defense counsel, the defendant, and possibly family members. And an important aspect of this case is would the defendant have been willing to plead guilty under any circumstances? Correct. It seems to me the defense attorney might very well, based upon the conversations he had with the defendant, be able to speak to that subject, but we haven't- we have no testimony. The- a defense- in an effective assistance of counsel case where, as your Honor mentioned, they come in and testify, but they don't always. They didn't inhale. And they oftentimes, hey, my prior attorney said he'll do anything. But it was the argument you just made, where was he? As if there was a burden on the state to bring him forth. There was a burden because the burden had been taken- our burden had been satisfied with the record, with the defendant's testimony, with the mother's testimony, and all the common sense interpretation of this record where this defendant never was told, that they needed to bring in the defense attorney if they thought- They were never told? Who should have told the defendant that the post-conviction hearing? I'm sorry? You say they were never told. Told by whom? The trial judge or the prosecutor? I'm saying that it's clear from the record the defendant was never told this. And as far as prejudice goes, if you're looking in- the sentence disparity is the key here. One of them. Natural life in a case you're not going to win versus 18 years right near the minimum. Common sense dictates that the defendant would have taken that deal just like he said he would. Time's up, counsel. You have a chance to address this and get a rebuttal. Thank you, Your Honor. Mr. Majors? Thank you. Please support, counsel- Counsel? I think counsel mentioned that the state's strongest position is that there's no prejudice here. At the bond hearing, I have the trial as September 12, 2013, and I have an immediate bond hearing afterwards, which is in the record, where the prosecutor wanted to increase the bond or make it more stringent because he faced a mandatory life imprisonment. And that was seven months prior to the defendant's testimony at the sentencing hearing that he wouldn't have pleaded guilty under any circumstances. So that was seven months of where he knew that he faced natural life. So that was what the prosecutor represented at the bond hearing after the trial court had convicted the defendant at the bench trial? Yes. In response to those representations by the prosecutor, what, if anything, did the defense attorney say, and what, if anything, did the trial court say? I don't recall, Your Honor. I don't recall. Is that transcript before us? It's in the record. I've read it recently. Mr. Majors? And I'm sorry, it may be here, but did you indicate that in your brief? No, I got it out of their brief. It was in their statement of facts, I think, or in their first initial brief. Okay. And then, go ahead. Well, I'm sorry, but it is in the record, it was in the briefing, that the defendant was admonished as to, excuse me, let me retract that, that information relative to this being a mandatory natural life sentence was communicated in open court with the defendant in prison? Yes. Okay, in advance of the sentencing. Seven months in advance, approximately seven months. In addition, the pre-sentence report was November 5th, 2013, and that contained the possible life. So that's four months. Right. And when you talk about possible life and mandatory life, those are two different things. Right. Possible life, it's more akin to what he had been actually admonished about, which is he could serve consecutive 60-year terms. Everybody would agree that that's practically speaking. Well, I don't know that I agree. I think it was five counts of 60-year terms. Okay, five years of 60 counts. That's 300 years. So he knew early on he was looking at 300 years, or if you prefer, 120 years. Even more persuasive then, that that's more akin to possible natural life. Oh, yes. Much different than mandatory natural life. Yes.  There is a distinction there. Yes. But I want to be clear. Your representations are then the PSI spoke about possible natural life, but the prosecutor at the bond hearing immediately after conviction said mandatory natural life? Yeah. I found that in their brief preparing for our war, and I found the transcript, and I looked it up, and he's convicted now at a bench trial with the same judge. So the prosecutor gets up and wants to strengthen the bond, and I remember the words mandatory natural life. I mean, maybe there's a chance I'm wrong. And you don't recall what response of the defense counsel? No, no. Such as? No, that's not true. I think there was a discussion about whether his bond should be modified, but nothing else. I don't recall anything else. Was the bond modified? I don't recall anything. Okay. Go ahead. All right. Now, as the courts pointed out several times here, at the third stage hearing, it's their burden to show what they purport to show as error, and the trial judge was also the same judge at the third stage hearing, and that Coleman case states that maybe she's entitled to even more deference. But here's what happened briefly. When that came up at the third stage hearing, and I think this is the prosecutor, a question, I'll be brief. So how can you sit there now and say I would have pled guilty? Defendant's answer, which I think is ridiculous on its face. Because I prepared that statement after being found guilty. Well, that's the same day as I submit he was told about mandatory life. I was in county, referring to the jail, I guess, before sentencing, and I spent a month, month and a half, preparing my statement, under the assumption I was doing 6 to 30. I didn't know about life until I came to sentencing. All right, that's false. Was it the bond hearing? It was the pre-sentence report. The pre-sentence report was four months prior to this statement. Okay. What did the prosecutor, in advance of the statement and allocution, what did the prosecutor recommend be the sentence, and what did the defense attorney recommend the sentence be? At the sentencing hearing? Yes. I don't recall, Judge. I'm not going to say it. Do you remember the sequence of events? Sometimes judges do it differently. I don't recall. Typically, the right of allocution is the last thing. Sometimes it's before the representations. You don't recall the order? My best memory would be that it was the last thing. Like you just said, that's typically what happens. So you think the prosecutor had already asked or said that natural life was required? Excellent question, but I'm not going to say I know the answer. Okay, go ahead. Well, counsel, before you move away from that, Mr. Johnson has argued that counsel stated at the sentencing hearing defendant was never told prior to trial that he was subject to a mandatory life sentence. Do you agree with that? Did he say that? I disagree with the truth of what he said. I'm not going to dispute the defense counsel in the throes of advocacy at the sentencing hearing said that. They say all kinds of things. I don't know whether he said it or not. I'm not going to dispute it. Well, okay. I mean, I remember them saying he had no record. But the reason I ask that question, because I think Mr. Johnson is suggesting that since counsel has said that, as an officer of the court, on the record, that might be why they did not choose to call defense counsel at the subsequent hearing, because they already had the statement from counsel, which apparently you're not refuting, was made to the trial court. At the sentencing hearing? Yes. I don't know. The only response I have, Your Honor, is therefore, I mean, if I was representing the defendant, the father was there. He wasn't called. The mother and the defendant wasn't called. You could have called the prosecutor. It was a different prosecutor. You could have called the defense lawyer. It was a different defense lawyer, and find out. And I object to this idea that there was some specific offer made. I think Judge Boknek, if I'm pronouncing that correctly, just said she didn't say there was a specific offer of 10 years or 12 years or 18 years. There were five counselors, two different girls. She just said that offer was made. She didn't get into the specifics. And if I was doing the hearing, I certainly would get into the specifics, exactly who said what, how many years. A specific plea agreement or specific discussion wasn't made of record as to what the prosecution may have offered or what the discussion was? It all came from at the first state hearing. That came from the defendant and his mother, and they just – no, they didn't get into what specific charges they would be guilty. There were five, two different girls. Was the claim made that he could have pled guilty for 18 years? They claimed that, yes. But that was just from the defendant's mother, the prosecutor, and the defense attorney that were testifying? No, they never did, no. I mean, the trial judge, the third state judge, said they weren't proud. Who was the prosecutor at the original trial? I think it's – I'm not going to pronounce it. Yedniak, I think. Okay. Is it correct that the state, at sentencing, and I think you've implicitly referred to this a few moments ago, actually argued the defendant was subject to being sentenced on five counts instead of just two? I think so. I think he was. I think the judge was wrong. I think they were mandatorily consecutive. It said 60 times, five times. I understand that's what you think. The judge was terrible. My question is, did the prosecutor make that argument at sentencing? Vaguely. I vaguely remember he did. Is this the same prosecutor that, at the time of this bond hearing, was saying that this was mandatorily natural law? I don't think so. Again, I don't know. I don't think so. I'm just curious about this sentencing hearing, what everybody's saying. The prosecutor, what recommendation is being made in terms of sentence. The defense attorney, what recommendation is being made. And then what the trial court says at the time of sentencing in terms of the sentence. When does natural life come in? Right at that point? The trial court sentence dependent to natural life right at that time? In court? At the sentencing hearing? Yeah. Yeah, I think so. My memory is, yeah. Okay. And then the defendant says, oh, hell, I didn't. Okay. And because I didn't read it and I may have overlooked it, was there some colloquy in court about the trial judge discovering that, you know, notwithstanding what had previously been suggested by counsel, this was a situation where the defendant was facing mandatory natural life? Was it the trial judge that discovered this issue? I don't know. I'm not going to say what I don't know. The other thing I want to talk about here is they're the ones that wanted the court to judicially notice the prior appeal. And I went to Grayley to show that this was not a closed case. This court said it was not a closed case. They're the ones that asked you to look at your prior opinion that shows it's not a closed case. Now, they're going to get up and say the trial judge or the third stage judge said it was. They were hoping to win all the way through this thing. They did everything they could to win. They knew it was 300 years. They knew it was a life sentence. And now, when it's all over, they want to pull a get out of jail free card out of their back pocket and say let's do it again. Well, wouldn't things have been a lot better if it was made clear like at a pretrial checklist to say, turn to the prosecutor and say, if the defendant is convicted, what sentences does he face? Certainly. To have been dealt natural life, judge. That would have solved all this, wouldn't it? Yeah. I mean, if the defendant had not said what he said under oath at the third stage hearing, and he had not said I wouldn't plead guilty under circumstance, this would be a wholly different case. You're right. It's sloppy. I don't like it. You don't like it. But I don't think there's a reversible error here. Okay. Thank you, counsel. Mr. Johnson, your rebuttal, sir. Please, go ahead. Briefly on one of the last points where counsel said Mr. Conner tried to win. He proclaimed his innocence throughout the case. Is that going to be something that's held against him? I really think most defendants, or all, do that at every trial. But more importantly, your Honor asked the questions, and we did lay out the sequence of events with your Honor's questions in mind on page 13 of our brief. The defendant was found guilty on September 13th. And that time, it wasn't a bond hearing prior to trial. They tried to revoke his bond. And for the first time, the defendant was told he was subject to, again, subject to life in prison. What page of your brief? Page 13 of our opening brief, your Honor. And then, as I mentioned before, the PSI said possible life imprisonment. So this, again, is what this defendant is hearing. And most importantly, there was a hearing on the post-trial motions. And the prosecutor responded to defense counsel's assertion that the court, at that point, had failed to admonish the defendant he was facing a possible life sentence. And the State argued, and I have it laid out there. But at the end of what he says, he says, you don't have to tell him that, Judge. Basically, I'm paraphrasing. You don't have to tell him that, Judge. I suppose, I guess the defendant could argue perhaps his counsel didn't tell him that. And I said, absolutely. And that's why I'm here. His counsel didn't tell him that. The prosecutor said at that time, it's a little different than, and I'm not casting aspersions, but the words are very important. What the prosecutor said at that time, for the first time about life, is, quote, it's only once he's found guilty of both of them that it becomes a mandatory life sentence in the State's eyes. Again, so in the State's eyes for the first time, that's their argument. And when is this? That was a few months on April 2, 2014. So then we go to the sentencing. And that, again, is when defense counsel says, and I couldn't have done better at the sentencing hearing than this, quote, defendant was never admonished, obviously, in the pleadings or at the arraignment, obviously, in this case, or at any other time that he was subject to a natural life sentence. And defense counsel argued further in response, Justice Harris, to your question. The defense then argued that a life sentence was not mandatory and recommended, quote, that the court impose the minimum of six years in the Department of Corrections and that those terms be ordered to be served consecutively to one another. What you just said about what the defense counsel represented in the court, though, wasn't true. In the bond hearing, from your brief, you quote the prosecutor as saying that the defendant was subject to natural life in prison. Now, in your footnote, you say subject to suggest only that the life sentence is possible, not mandatory, being generous in assuming that's the case. But what you just quoted from the defense counsel said the defendant was never told that he was subject to a life sentence. And in your own brief, you've got it clearly with the bond hearing, he was. Seven months before he testified. Isn't that right? Well, no. The state, the seven months before, in the state's eyes, that's an argument. I'm making the argument here that you may think it's incorrect. Counsel, I want to be clear on this. Okay. You quoted from the defense counsel's statements at some point, I guess at the sentencing hearing, that the defendant was never told he was subject to natural life. That's the quote you just made. Absolutely. On September 13, after being found guilty,  These can't both be correct. So the defense attorney had to be mistaken, wasn't he? On September 13, no. The subject to is not mandatory life. But that's not what the defense counsel quote. You quoted the defense counsel saying he was never told he was subject to natural life. That's the quote you just gave us, wasn't it? Yes, absolutely. Isn't that inconsistent with what the prosecutor said at the bond hearing? Subject to. He used the term subject to. Well, I suppose he did. The point is that the defense counsel got it wrong. Well, isn't that important? I don't think so. Why not? Are we going to hold Michael Connor when there's still an argument going on about what his sentence is going to be? Where honestly, counsel said it was sloppy. When a man's life is at stake, I don't know if sloppy is acceptable. Sometimes okay isn't good enough. I took up some of your time. I want to give you a chance to finish your rebuttal. Go ahead. Here, I mean, the defense attorney, even at the sentencing, is asking for the minimum. How is the defendant supposed to think, well, I know this guy I paid a lot of money to is saying I get the minimum. But the state, I'm subject to, now with my education, I'm subject to a natural life sentence in a sentencing scheme that fooled the court and that apparently we can't even agree on today. We're going to hold the defendant to his statement and elocution that, oh, well, you knew you were subject to a life sentence, so you better not say that you never would have pled guilty. I mean, if that's what they're hanging their hat on, I really think this case is about Curry. We have an attorney. This statement at the sentencing where he is still asking for a six-year sentence, he wouldn't ask that as a licensed attorney. You can't ask for a sentence that's illegal. Just as an observation, we see all kinds of strange and unjustified requests from defense counsel at all stages, including sentencing and asking for sentences that the law doesn't permit. If the trial judge goes along with it, now what? So I don't think that's a particularly strong argument. The defense counsel wouldn't be making an argument that the law doesn't tolerate. But maybe we can infer then from this, there's another inference to be drawn, and that tells us what this defendant knew. If that's what his attorney is saying, and he's hearing him plead for six to 12 years, maybe we can think, I know what this defendant thought he was going to get, and I know what he thought he was going to get when he rejected that deal. They try to say this case isn't like Curry, it's like Hale. He tried to win. He proclaimed his freedom. But if you look at Hale, what happened there is the defendant not only didn't have any evidence from the attorney or what kind of deal was offered, but that defendant bribed the victim, and that defendant bribed the witness and got the victim to recant. So the court said, well, you took steps. You thought the fix was in. Mr. Conner had nothing like that. Okay, thank you, counsel. Thank you, Samantha. Any other questions?